UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joseph Chamernick et al.,

       Plaintiffs,

v.                                                                    Civil No. 08-6475 (JNE/RLE)
                                                                      ORDER

United Steelworkers of America,
Local 2660; United Steelworkers
International Union; and Rudy Aho,

       Defendants.

---

Jerome D. Feriancek, Esq., and Jill K. P. Esch, Esq., Thibodeau, Johnson & Feriancek, PLLP,
appeared for Plaintiffs Joseph Chamernick et al.[1]

Mark W. Bay, Esq., and John G. Engberg, Esq., Peterson, Engberg & Peterson, appeared for
Defendants Rudy Aho, United Steelworkers International Union, and United Steelworkers of
America, Local 2660.

---

      Plaintiffs brought this action in state court against Rudy Aho, United Steelworkers

International Union, and United Steelworkers of America, Local 2660 (collectively, Defendants),

claiming breach of fiduciary duty, fraud, and civil conspiracy.  Defendants removed to this Court

on December 23, 2008.  The case is before the Court on Plaintiffs' motion to remand and

Defendants' motion to dismiss.  For the reasons set forth below, the Court denies Plaintiffs'

motion to remand and grants Defendants' motion to dismiss.

## I.      BACKGROUND

      Plaintiffs are former employees, or beneficiaries of former employees, of the National

Steel Pellet Company (Pellet Company), a subsidiary of the National Steel Corporation (National

---

[1]     There are fifty-two named Plaintiffs in this action.  For the sake of brevity, the Court
refers to them collectively as "Plaintiffs."

Steel).  The Court uses the term "Plaintiffs/Employees" to refer collectively to the Plaintiffs who

are former employees and to the former employees from whom the Plaintiffs who are

beneficiaries derive their claims.  The Plaintiffs/Employees worked at a Minnesota taconite mine

owned by the Pellet Company.  They were members of the United Steelworkers International

Union (International Union) and the United Steelworkers of America, Local 2660 (Local Union).

Aho is the former president of the Local Union.

Plaintiffs allege that the Plaintiffs/Employees qualified for pension benefits under the

"Rule of 65" set forth in the Pellet Company Pension Plan for Hourly Wage Employees (Pension

Plan).  The Rule of 65 provides:

> Any participant (i) who shall have had at least 20 years of continuous service as
> of his last day worked, (ii) who has not attained the age of 55 years, and
> (iii) whose combined age and years of continuous service shall equal 65 or more
> but [is] less than 80, and
>
> (a)      whose continuous service is broken by reason of a layoff or disability; or
>
> (b)      whose continuous service is not broken and who is absent from work by
> reason of a layoff resulting from his election to be placed on layoff status pursuant
> to the provisions of the Basic Agreement applicable in the event of a permanent
> shutdown; or
>
> (c)      whose continuous service is not broken and who, while on layoff status by
> reason of his election to be placed on such status pursuant to the provisions of the
> Basic Agreement applicable in the event of a permanent shutdown, accepts a job
> with an Employing Company and, prior to the expiration of 90 consecutive
> calendar days from the first day worked on such job, elects to retire,
>
> shall be eligible to retire and shall upon his retirement . . . be eligible for a
> pension.

Plaintiffs allege that the Plaintiffs/Employees were denied their Rule of 65 pension

benefits as a result of acts committed by Defendants after National Steel and its subsidiaries,

including the Pellet Company, filed for bankruptcy on March 6, 2002.  Plaintiffs allege in their

Complaint that after the bankruptcy filing, the Plaintiffs/Employees asked union leadership about

the status of their Pension Plan.  According to Plaintiffs, Aho told the Plaintiffs/Employees to

"[l]eave it alone, the International is taking care of it."  Plaintiffs allege that Aho assured the

Plaintiffs/Employees that they would be taken care of and that he, as president of the Local

Union, and the International Union were negotiating on behalf of union members for their

pensions.

On December 6, 2002, the Pension Benefit Guaranty Corporation (PBGC) assumed

responsibility for the Pension Plan because it was inadequately funded.  On the same day, the

PBGC sought termination of the Pension Plan in the United States District Court for the

Northern District of Illinois.  In a letter dated December 17, 2002, the International Union

informed union members that National Steel was unable to fund the Pension Plan.  Plaintiffs

allege that after receiving the letter, the Plaintiffs/Employees asked their union leadership about

retiring under the Rule of 65 and were told by Aho that "[w]e cannot honor the Rule of 65

pensions because there would not be enough people to run the mine" and that "[w]e are going to

take care of the 30-year guys to make sure they can draw their pensions and keep their jobs—

whatever it takes."  According to Plaintiffs, only employees who had 30 years of service or more

received their pension benefits.

On April 21, 2003, National Steel and the PBGC filed a stipulation with the bankruptcy

court in which National Steel and the PBGC set the termination date of the Pension Plan as

December 6, 2002.  The bankruptcy court issued the stipulation as an order on the same day, and

also approved the sale of National Steel's assets to the United States Steel Corporation (U.S.

Steel).  David R. Jury, an in-house attorney for the International Union who was personally

involved with the bankruptcy case, asserted in an affidavit that the Pellet Company mine where

the Plaintiffs/Employees worked was not shut down as of December 6, 2002.  On May 19, 2003,

National Steel and the Pellet Company terminated their employees.  U.S. Steel bought National

Steel's assets on May 20, 2003.

On December 4, 2008, Plaintiffs commenced this action in state court asserting claims for

breach of fiduciary duty, fraud, and civil conspiracy.  Plaintiffs allege that Aho's statements

telling the Plaintiffs/Employees "to leave it alone" and indicating that he and the International

Union were negotiating on behalf of union members induced the Plaintiffs/Employees to waive

their rights to participate in the negotiations relating to the Pension Plan between the

International Union and the PBGC.  Plaintiffs allege that the Plaintiffs/Employees relied on

Aho's statements to their detriment.  After removing the action, Defendants moved to dismiss it.

Plaintiffs then moved to remand.

## II.    DISCUSSION

Plaintiffs move to remand on the ground that the Court lacks subject matter jurisdiction

over the state-law claims asserted in the Complaint.  Defendants respond that removal was

proper because Plaintiffs' state-law claims are completely preempted by federal law.  In addition,

Defendants move to dismiss on the grounds that Plaintiffs' claims are time-barred.  The Court

first considers Plaintiffs' motion to remand because subject matter jurisdiction is a "threshold

requirement which must be assured in every federal case."  *Turner v. Armontrout*, 922 F.2d 492,

493 (8th Cir. 1991).

## A.    Plaintiffs' Motion to Remand

The parties dispute whether the Court has subject matter jurisdiction over this action, and

consequently, whether removal was proper.  Plaintiffs contend that the Court lacks subject matter

jurisdiction because they pleaded only state-law claims in their Complaint.  Defendants respond

that the Court has subject matter jurisdiction because Plaintiffs' claims are completely preempted

by the duty of fair representation imposed by Section 9(a) of the National Labor Relations Act

4

(NLRA), 29 U.S.C. § 159(a) (2006), and by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (2006), which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties."

A defendant may remove a civil action brought in state court to the appropriate federal district court if the district courts of the United States have original jurisdiction of the action.  28 U.S.C. § 1441(a) (2006); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.").  After removal, a plaintiff may move to remand to state court if the district court lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c) (2006).  The party opposing remand has the burden of establishing federal subject matter jurisdiction.  *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).  A district court's removal jurisdiction must be strictly construed and all doubts resolved in favor of remand.  *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007).  However, a district court has no discretion to remand a claim that states a federal question.  *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 542 (8th Cir. 1996).

Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar*, 482 U.S. at 392.  Under the well-pleaded complaint rule, the plaintiff is "master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law."  *Id.*  Moreover, a case ordinarily may not be removed on the basis of a federal defense, even that of preemption, "even

if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 392-93.

Complete preemption, however, differs from preemption used only as a defense. *Gaming Corp.*, 88 F.3d at 543. Complete preemption permits removal to a federal court even though a federal question does not appear on the face of the complaint. *King v. Hoover Group, Inc.*, 958 F.2d 219, 222 (8th Cir. 1992). Complete preemption arises when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

Complete preemption applies in cases asserting state-law claims which seek to enforce rights that arise under a collective bargaining agreement (CBA). *King*, 958 F.2d at 222. Section 301 of the LMRA preempts state-law claims that are founded directly on rights created by a CBA and claims that are substantially dependent on analysis of a CBA. *Id.* When a state-law tort claim is "inextricably intertwined with consideration of the terms of the labor contract," it is completely preempted under Section 301. *St. John v. Int'l Ass'n of Machinists*, 139 F.3d 1214, 1217 (8th Cir. 1998). A state-law claim whose resolution does not require construction of the CBA, however, is not preempted. *Id.*; *see also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").

In addition, the federal duty of fair representation completely preempts state law "because of the congressional intent that federal law, developed to further the goals of the NLRA, entirely govern the duties which an NLRA collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity." *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1169-70 (5th Cir. 1989); *see Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) ("The federal statutory duty which unions owe their members to represent them fairly also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative."); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) ("Where a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations."). The Court considers whether each of Plaintiffs' claims is completely preempted in turn.

### 1.      Breach of Fiduciary Duty

Defendants contend that Plaintiffs' claims for breach of fiduciary duty are completely preempted because they are substantially dependent on analysis of the Pension Plan and because the only duty Defendants owed the Plaintiffs/Employees was the duty of fair representation. Plaintiffs respond that their claims do not require interpretation of the Pension Plan because their claims are entirely based on Aho's fraudulent statements and the effect they had on the Plaintiffs/Employees. Plaintiffs also contend that they did not make any allegations of unfair representation in their Complaint. The Court first turns to whether Plaintiffs' claims for breach of fiduciary duty are substantially dependent on analysis of the Pension Plan.[2]

---

[2]      Defendants assert, and Plaintiffs do not dispute, that the Pension Plan is a CBA. Moreover, Plaintiffs allege in their Complaint that Defendants negotiated the Rule of 65 provision on behalf of union members. The Court concludes that the Pension Plan is a CBA.

The starting point for determining whether interpretation of a CBA is required in order to resolve a particular state-law claim is an examination of the claim itself. *Trustees of Twin City Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006). Plaintiffs must show duty, breach of duty, causation, and damages to succeed on their claims for breach of fiduciary duty. *Conwed Corp. v. Employers Reinsurance Corp.*, 816 F. Supp. 1360, 1362 n.3 (D. Minn. 1993). Here, Plaintiffs allege damages based on their assertion that the Plaintiffs/Employees were denied pension benefits to which they were entitled under the Rule of 65.

Claims that assert damages in the form of loss of entitlement to benefits under a CBA "necessarily involve the federal courts in adjudicating [claims] 'substantially dependent on analysis of collective-bargaining agreements.'" *Adkins v. Gen. Motors Corp.*, 946 F.2d 1201, 1208 (6th Cir. 1991); *see also Beidleman v. Stroh Brewery Co.*, 182 F.3d 229, 232-35 (3d Cir. 1999) (finding claims for fraudulent misrepresentation, tortious interference, and civil conspiracy completely preempted by Section 301 because "a court would have to interpret the terms of the CBA to determine what rights, relationships or duties it conferred on the parties" to decide the merits of the claims); *King*, 958 F.2d at 222 (finding claim that plaintiff was entitled to a hearing prior to termination was substantially dependent on the terms of the labor agreement and therefore completely preempted by Section 301). Plaintiffs contend, however, that their claims are not substantially dependent on analysis of the Pension Plan because the determination of whether the Plaintiffs/Employees qualified for pension benefits under the Rule of 65 "is a matter

of simple arithmetic and only involves the most superficial examination of the terms of the agreement."[3]

Under the Rule of 65, in addition to meeting the criteria for age and years of continuous service, a participant must meet one of the conditions set forth in clauses (a), (b), or (c) to be eligible for pension benefits.  Determining whether the Plaintiffs/Employees met one of those conditions would require the Court to ascertain whether each of the Plaintiffs/Employees had continuous service broken by reason of a layoff or disability or had continuous service that was not broken and had elected to be placed on layoff status "pursuant to the provisions of the Basic Agreement applicable in the event of a permanent shutdown."  If the Plaintiff/Employee had elected to be placed on layoff status, the Court would be required to ascertain whether the Plaintiff/Employee was "absent from work" or had "accept[ed] a job with an Employing Company."  Those determinations would require interpretation of the terms "layoff," "continuous service," "broken," "permanent shutdown," "absent from work," "Employing Company," and any relevant terms in the applicable provisions of the "Basic Agreement," as well as consideration of whether a permanent shutdown occurred before the Pension Plan terminated.  The Court therefore concludes that resolution of Plaintiffs' claims for breach of fiduciary duty is substantially dependent on analysis of the Pension Plan.  *See Gen. Motors*, 946 F.2d at 1209-11 (holding that plaintiffs' fraud claims were completely preempted by Section 301

---

[3]     Plaintiffs also seek to distinguish this action from *King*, 958 F.2d 219, because the plaintiff in *King* brought an earlier action in federal court alleging a breach of the duty of fair representation whereas here, Plaintiffs commenced their action in state court and did not allege a breach of the duty of fair representation.  This distinction is of no moment because the Eighth Circuit did not rely on the earlier federal suit or the allegation of breach of the duty of fair representation when finding the subsequent state-court case properly removed in *King*. Moreover, the Eighth Circuit has not hesitated to find complete preemption in cases where no prior federal suit was filed and where the plaintiff asserted only state-law claims.  *See Schuver v. MidAmerican Energy Co.*, 154 F.3d 795 (8th Cir. 1998).

because their resolution required analysis of a CBA that, while not "especially difficult," would be "extensive"). Consequently, Plaintiffs' claims for breach of fiduciary duty are completely preempted by Section 301.

Moreover, Plaintiffs allege in their Complaint that the fiduciary duties owed the Plaintiffs/Employees by Defendants were the duty to represent the interests of the union members fairly and impartially and the duty to act toward and on behalf of the Plaintiffs/Employees with the utmost good faith and honesty. These duties are encompassed within the duty of fair representation. *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 75 (1991) ("[A] union owes employees a duty to represent them adequately as well as honestly and in good faith."). Plaintiffs have identified no other source for the alleged duties; the Court therefore concludes that no other source exists. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 374 (1990) ("If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the [CBA] specifically indicating an intent to create obligations enforceable against the union by the individual employees."). In addition, Plaintiffs allege nothing more than unfair representation in that they allege that Defendants breached their duties "by only negotiating the pensions for the members with 30 years" of service. State-law claims that seek to enforce duties imposed by virtue of a defendant's role as a union representative are completely preempted by the duty of fair representation. *Mireles*, 526 F.3d at 531. Accordingly, Plaintiffs' claims for breach of fiduciary duty are also completely preempted by the duty of fair representation.

### 2.  *Fraud*

The Court turns to Plaintiffs' fraud claim. The Court first considers whether Plaintiffs' fraud claim is substantially dependent on analysis of the Pension Plan. Under Minnesota law, the elements of common-law fraud are (1) a false representation of material fact, (2) knowledge

of the representation's falsity by the person making the representation, (3) intent that another

person relies on the false representation or circumstances justifying reliance by the other person,

(4) reasonable reliance on the false representation, and (5) damages attributable to the false

representation. *In re Strid*, 487 N.W.2d 891, 893-94 (Minn. 1992). As with Plaintiffs' claims

for breach of fiduciary duty, Plaintiffs' alleged damages are based on the assertion that the

Plaintiffs/Employees were entitled to pension benefits under the Rule of 65. Plaintiffs' fraud

claim therefore is completely preempted because it is substantially dependent on analysis of the

Pension Plan for the reasons given with respect to Plaintiffs' claims for breach of fiduciary duty.

Moreover, to the extent that Plaintiffs base their fraud claim on misrepresentations made

by Aho and the Local and International Unions, the duty of fair representation extends to the

alleged misrepresentations. *Cf. Anderson v. United Paperworkers Int'l Union*, 641 F.2d 574,

575-78 (8th Cir. 1981) (holding that the duty of fair representation extends to a union

representative's alleged misrepresentations relating to the existence of a security fund where the

union members relied on the alleged misrepresentations in deciding to ratify a CBA and claimed

they would have gone on strike had they known the truth). The Court concludes that Plaintiffs'

fraud claim is completely preempted by the duty of fair representation.

### 3. *Civil Conspiracy*

Plaintiffs assert a claim for civil conspiracy. A civil conspiracy claim must be supported

by an underlying tort. *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997). Here,

Plaintiffs allege civil conspiracy based on their fraud claim. For the reasons given with respect

to Plaintiffs' fraud claim, Plaintiffs' civil conspiracy claim is completely preempted by Section

301 and the duty of fair representation.

Because Plaintiffs' state-law claims are completely preempted by federal labor law, the Court has subject matter jurisdiction over this action. Accordingly, the Court denies Plaintiffs' motion to remand.

**B.      Defendants' Motion to Dismiss**

Having concluded that Plaintiffs' claims are completely preempted, the Court turns to Defendants' motion to dismiss on the ground that Plaintiffs' claims are barred by the six-month statute of limitations set forth Section 10(b) of the NLRA, 29 U.S.C. § 160(b) (2006). When ruling on a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court must accept the complaint's factual allegations as true and construe them in the light most favorable to the non-moving party. *Midwestern Mach., Inc. v. Nw. Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir. 1999). Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for failure to state a claim based on the statute of limitations if it appears from the face of the complaint that the statute of limitations has run. *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004).

A claim under Section 301 of the LMRA or for breach of the duty of fair representation must be filed within six months after the claim arises. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70 (1983). The claim accrues when the claimant discovers, or through the exercise of reasonable diligence, should have discovered, the acts constituting the alleged violation. *Schuver v. MidAmerican Energy Co.*, 154 F.3d 795, 800 (8th Cir. 1998); *Skyberg v. United Food & Commercial Workers Int'l Union*, 5 F.3d 297, 301 (8th Cir. 1993). Plaintiffs describe the alleged violation as Aho's misrepresentation of the status of the negotiations between the International Union and the PBGC, which induced the Plaintiffs/Employees to waive their right to participate in the negotiations.

According to Plaintiffs, the Plaintiffs/Employees asked union leadership about the Pension Plan "continuing until the summer of 2003."  On April 21, 2003, the bankruptcy court issued the order setting the termination date of the Pension Plan as December 6, 2002, and the Pellet Company terminated its employees on May 19, 2003.  Therefore, as of the spring of 2003, the Plaintiffs/Employees no longer had the ability to participate in the negotiations.  Plaintiffs do not contend that they or the Plaintiffs/Employees had not discovered or could not have discovered Aho's alleged misrepresentations by that time.[4]  Accordingly, the Court concludes that Plaintiffs and the Plaintiffs/Employees discovered or should have discovered the acts constituting the alleged violation no later than the spring of 2003.  Plaintiffs commenced this action on December 4, 2008, well after expiration of the six-month statute of limitations.  The Court therefore grants Defendants' motion to dismiss.[5]

---

[4]     Plaintiffs did not make any argument relating to the statute of limitations in their memorandum in opposition to Defendants' motion to dismiss other than arguing that the six-month statute of limitations does not apply because their claims are state-law claims.  This argument is unpersuasive because Plaintiffs' completely-preempted claims are considered federal claims, *see Caterpillar*, 482 U.S. at 393, and are subject to dismissal based on the federal statute of limitations, *see Schuver*, 54 F.3d at 799-801.

[5]     Defendants also seek dismissal of Plaintiffs' claims against Aho on the ground that a union representative cannot be held individually liable for breach of the duty of fair representation.  Because the Court concludes that Plaintiffs' claims are barred by the statute of limitations, the Court does not reach this issue.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.      Plaintiffs' Motion to Remand [Docket No. 12] is DENIED.

2.      Plaintiffs' request for attorney fees and costs [Docket No. 12] is DENIED.

3.      Defendants' Motion to Dismiss [Docket No. 6] is GRANTED.

4.      Plaintiffs' Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 1, 2009

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge